# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**RHONDA BUGGS**                                                           **PLAINTIFF**

**NO. 3:20-CV-00192-JMV**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security[1]**                             **DEFENDANT**

## <u>MEMORANDUM OPINION</u>

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding applications for a period of disability and disability insurance benefits and supplemental security income benefits ("SSI"). The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court, having reviewed the record, the administrative transcript, the briefs of the parties, and the applicable law and having heard oral argument, finds that for the reasons set out below, the Commissioner's decision should be affirmed.

### Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42

---

[1] The Clerk is directed to amend the record to reflect the substitution of the Acting Commissioner as successor in the place of Andrew Saul.

U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court recently explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high.* Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

### Discussion

Plaintiff presents the following issues for this appeal:

1. Whether the ALJ erred when he gave weight to opinions that did not have the benefit of all the pertinent medical evidence.

2. Whether the ALJ erred when he failed to properly consider all the evidence of record.

The Court will take up these issues seriatim.

2

**1. The ALJ did not err in assigning weight to the medical opinions in this case.**

In this case, the ALJ gave weight to the opinions of state agency medical consultants ("SAMC"), who assessed Plaintiff's physical residual functional capacity ("RFC") in March of 2017 and May of 2017. Dr. Carol Kossman and Dr. Glenn James assessed the Plaintiff with a light RFC. The SAMCs noted in relevant part:

**RFC – Additional Explanation**
This 37 year old CLMT has now filed her 8th claim. AOD is 7/13/13 date of ALJ 7/12/13. This Title II claim has a DLI of 12/31/16.

Light RFC seems appropriate as of DLI.

**PHYSICAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT**

**RFC1**

**Indicate whether this Physical Residual Functional Capacity (RFC) assessment is for:**
Date Last Insured: 12/31/2016

**FINDINGS OF FACT AND ANALYSIS OF EVIDENCE**

**Reconsideration Analysis**
RATIONALE: Claimant is a 38 year old female requesting a reconsideration on a previous denial. Claimant alleges worsening conditions. Claim is a Title 2 only with an expired DLI of 12/31/16. There are no new record prior to DLI to review. Initial determination has been reviewed, claimant was given a light work RFC. This examiner agrees with the determination. Therefore this is an affirmation of the prior claim.

The ALJ found as follows:

As for the opinion evidence, State agency medical consultants initially determined that the claimant was capable of light work (Exhibit C1A). She could frequently perform all postural activities except for occasional stooping. Upon reconsideration, the initial determination was affirmed (Exhibit C3A). This opinion is given only some weight because it is not entirely consistent with the record as a whole. While the record supports the finding that the claimant would be able to lift and carry at the light exertional level, her back problems and lower extremity neuropathy would limit her to standing and/or walking a total of four hours in a day. Further, her physical exams do not support the provided postural limitations. Lastly, her more recent treatment records for carpal tunnel syndrome show that she would be limited to frequent reaching, handling, and fingering.

According to Plaintiff, "[t]he problem with any reliance on the state agency physicians' opinions is that these physicians only based their opinions on evidence through the date last insured ("DLI") of December 31, 2016." Pl.'s Br. 5. Plaintiff adds that "there was never an

opinion with respect to any of the evidence for . . . [her SSI application] and for any evidence generated after her DLI of December 31, 2016." *Id.*

> According to Plaintiff, the SAMCs did not have the following pertinent records:
> • November 12, 2018; MRI of cervical spine. Impression. 1. Very Small central disc protrusion C3-4 as noted above; 2. Mild to moderate central to paracentral disc protrusion C4-5, as noted above; 3. Mild disc protrusion and particularly right paracentral to lateral location C5-6, as noted above. (TR 445).
> • December 12, 2018; EMG Report; Conclusion: Abnormal study. 1. There is electrophysiologic evidence of an ulnar entrapment neuropathy across the ulnar gross bilaterally. L>R. Ultrasound revealed an enlarged hypoechoic ulnar nerve at the groove bilaterally, L>R; 2. There is electrophysiologic evidence of a right median neuropathy at the wrist. These findings meet the minimum criteria for very mild carpal tunnel syndrome. (TR 456).
> • January 7, 2019; MRI of the lumbar spine. L4/L5, there is a moderate broad-based disc bulge and facet degenerative changes and annular tear with mild spinal canal stenosis. There is mild right-sided foraminal narrowing…(TR454-455). Impression: Impression: Scattered degenerative disc disease most significant with mild spinal canal stenosis at this level. There is foraminal narrowing as discussed above. (TR 455).

Pl.'s Br. 5. Plaintiff ultimately contends "the . . . ALJ impermissibly translated nearly all of the material evidence that had been generated since the SSI filing date. There is no opinion that properly considers or account for this evidence." *Id.* at 6.

Plaintiff's argument is unavailing. First, even Plaintiff acknowledges the ALJ's RFC is not completely based on the SAMCs' opinions. Indeed, the ALJ clearly stated he attributed only "some weight" to those opinions. Second, Plaintiff makes no attempt to show how any of the later evidence is inconsistent with the ALJ's RFC determination. The ALJ considered the claimant's neck and low back impairments and carpal tunnel syndrome in formulating the RFC. Ultimately, in view of the RFC found by the ALJ, only sedentary jobs were available, and Plaintiff has not shown how any of the evidence above supports limitations inconsistent with the requirements of the jobs proffered by the VE. Thus, notwithstanding any error committed by the ALJ, Plaintiff has shown no prejudice.

**2. The ALJ did not err in evaluating the evidence of record.**

Plaintiff argues that "in light of the holding in *Loza v. Apfel*, the ALJ clearly erred in his assessment of her carpal tunnel syndrome, his limitations with respect to her neck/cervical spine, and her postural limitations." Pl.'s Br. 7. According to Plaintiff, "[t]he problem with the ALJ's analysis of the carpal tunnel is that he only incorporated a limitation for the state of what he perceived her limitations would be *after* her surgery. In his decision he stated, '[S]he had improvement in her carpal tunnel symptoms after undergoing surgery.'" *Id.* at 8. According to Plaintiff, if the ALJ limited her "to frequent use of her dominant upper extremity while making the concession that improvement occurred *after surgery*, . . . the ALJ erred by failing to consider her for a closed period of benefits up until she had the surgery on her dominant upper extremity." *Id.*

Plaintiff's argument here is fallacious. According to Plaintiff, if her status improved after surgery, and this landed her at the level of "frequent" manipulative work, her status prior to surgery had to be suitable only for less than "frequent" manipulative work. However, under the regulations, the term "frequent means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251. As such, it is not inconceivable that prior to surgery, Plaintiff's capacity for work was at a lower level of the "frequent" range and remained within the range of "frequent," notwithstanding improvement after surgery. Indeed, a December 2018 EMG report described Plaintiff's carpal tunnel syndrome as consistent with "the minimum criteria for very mild carpal tunnel syndrome." Tr. 467. Furthermore, according to the Dictionary of Occupational Titles ("DOT"), the call-out operator job[2] required only occasional (exists *up to* 1/3 of the time) reaching, handling, and fingering, and 52,000 jobs existed in the national economy.

---

[2] DOT 237.367-014, 1991 WL 672186.

Tr. 68.  Plaintiff has not persuaded the Court that the evidence shows she could not perform this job.  Accordingly, Plaintiff has not shown prejudice.

Concerning Plaintiff's neck impairment, she argues there is not substantial evidence to support the ALJ's failure to include any limitations in the RFC for her impairment.  Pl.'s Br. 10.  However, the ALJ specifically noted that a neurosurgical exam in February 2019 revealed full range of motion in the cervical spine.  Tr. 21, 509.  This evidence, along with other evidence cited by Defendant, constitutes substantial evidence.

Lastly, Plaintiff points out, concerning her postural limitations, that the ALJ stated, "Further her physical exams do not support the provided postural limitations."  Pl.'s Br. 11.  Plaintiff explains that the "ALJ was making this reference with respect to the limitations the state agency medical consultants identified of the Plaintiff that opined that she could occasionally stoop."  *Id.*  The Court finds there is no prejudice shown here because, according to the DOT, none of the jobs proffered by the VE required stooping.

Based on the foregoing, the ALJ committed no reversible error, and the Commissioner's final decision will be affirmed.

Signed this 17th day of August, 2021.


/s/ Jane M. Virden
U.S. Magistrate Judge

6